UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

ADAM COLE,

   Petitioner,

v.

WARCEN C. CARTER,

   Respondent.

Civil Action No.: MJM-24-179

**MEMORANDUM**

    Petitioner Adam Cole, who is currently incarcerated at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"), filed this pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 alleging that disciplinary proceedings violated his constitutional due process rights. ECF No. 1 (Petition). Respondent Warden C. Carter filed a Motion to Dismiss or, in the Alternative, for Summary Judgment on April 25, 2024. ECF No. 7 (Motion). Cole opposes the Motion. ECF No. 11 (Response). Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* Rules 1(b), 8(a), *Rules Governing § 2254 Cases in the U.S. Dist. Cts.*; Loc. R. 105.6 (D. Md. 2023). For the reasons set forth below, Respondent's Motion is granted.

    **I.    BACKGROUND**

    Cole is serving a 60-month sentence for possession with intent to distribute MDA, cocaine, and marijuana in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and (b)(1)(D). Darrell Huff Decl. (ECF No. 7-1) ¶ 5. He has a projected release date of December 18, 2024. *Id.* ¶ 5, Attach. A.

    On July 20, 2023, an officer conducting rounds at FCI-Cumberland in the recreation yard randomly searched Cole's gym bag, which was hanging on a fence. *Id.* ¶ 6, Attach. B, Attach. C. The search uncovered stamps, folded papers with orange strips inside, unidentified colored paper,

batteries, and wire. *Id.* ¶ 6. Cole was escorted to a lieutenant's office for further inspection. *Id.* Cole denied knowing what the colored paper was or how it came to be in his gym bag. *Id.*

Discipline Hearing Officer ("DHO") Darrell Huff attests that the substances uncovered in Cole's bag were too small to test in a Narcotics Identification Kit ("NIK"). *Id.* ¶ 7. An Assistant Health Services Administrator identified the four translucent orange films as Suboxone Sublingual film, a Schedule III controlled substance. *Id.*; Justin Sines Decl. (ECF No. 7-2) ¶¶ 4–5, Attach. A. The Administrator confirmed that Cole was not prescribed Suboxone. Huff Decl. ¶ 7, Attach. B; Sines Decl. ¶ 6. An initial incident report was issued the same day as the incident, at 2:42 p.m. Huff Decl. ¶ 8, Attach. D. The report was updated at 3:58 p.m., when the substances were identified and was delivered to Cole. *Id.* ¶ 9, Attach. E. The incident report was rewritten again on July 24, 2023, at 9:18 a.m., to include Cole's conversation with the lieutenant. *Id.* ¶ 10, Attach. B. Cole received a copy of the updated report at 9:40 a.m. *Id.*

Cole attended a hearing before the Unit Discipline Committee on July 25, 2023. Huff Decl. ¶ 11. The Committee referred the incident report to a DHO. *Id.* Cole received a notice of the disciplinary hearing and his rights at that hearing. *Id.* ¶ 12. Cole requested to review the video evidence but did not request to call witnesses or to have a staff representative. *Id.* ¶ 12, Attach. F, Attach. G.

DHO Huff held Cole's disciplinary hearing on August 3, 2023. Huff Decl. ¶ 13. Cole confirmed that he received a copy of the incident report, did not want to call witnesses, did not have documentary evidence to present, and understood his rights. *Id.* Cole again requested that the video evidence be reviewed by the DHO. *Id.* Huff attests that in deciding the matter, he considered "the incident report, chain of custody form, staff memoranda, photographs, video evidence" and Cole's written statement. *Id.*

Based on the evidence and Bureau of Prisons ("BOP") policy, DHO Huff determined that Cole had "committed the act as charged." Huff Decl. ¶¶ 14–15. He attests that he gave greater weight to the officer's incident report because the suboxone was found in Cole's gym bag. *Id.* ¶ 14. He states that BOP Program Statement 5270.09 dictates that inmates are responsible for keeping their property contraband free and by allowing others to place items in his gym bag, he became responsible for those items. *Id.* As a result, Cole was sanctioned to loss of 41 days of Good Conduct Time ("GCT"), 30 days in disciplinary segregation, and 9 months loss of commissary and phone privileges. *Id.* ¶ 16. Cole was provided with a copy of the disciplinary report on August 24, 2023, and advised of his right to appeal. *Id.* ¶ 17, Attach. H.

## II.  DISCUSSION

A § 2241 petition may be filed to contest the manner in which a sentence is executed. *See In re Vial*, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997) (en banc) ("[A]ttacks on the execution of a sentence are properly raised in a § 2241 petition."); *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996) ("A petition under 28 U.S.C. § 2241 attacks the execution of a sentence rather than its validity. . . ."). A showing that a prisoner is in custody in violation of the Constitution or laws or treaties of the United States may support issuance of a writ of habeas corpus. *See* 28 U.S.C. § 2241(c); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

Cole raises three grounds for relief for violation of his constitutional due process rights. First, Cole states that the prison officials failed to discipline the other inmates involved in the incident. Petition (ECF No. 1) at 6–7. Cole asserts that his bag was found in a common area where other inmates had access to it, but those inmates were not disciplined like he was. *Id.* at 7. Second, Cole contends that the prison staff failed to test the unknown substances in his bag with a NIK, and it was instead visually identified. *Id.* Third, Cole asserts that he was not allowed to view the

video footage for his disciplinary hearing. *Id.* Cole requests that the incident report be withdrawn and his GCT credits, commissary privileges, and phone privileges be reinstated. *Id.* at 8.

Respondent contends that the Cole received all the process that he was due, that Cole's claim regarding the discipline of other inmates fails to raise a constitutional claim, and that staff were not required to test the unknown substances with a NIK test. Motion (ECF No. 7). For the reasons that follow, Cole's Petition will be denied.

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution and thus are not entitled to the full array of rights due a defendant in a criminal proceeding. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where a prisoner faces the possible loss of diminution credits, they are entitled to (1) advance written notice of the charges against them; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where they are afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564–71. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985).

The record shows that Cole was provided written notice of the charges against him and of the disciplinary hearing. He also received a written report following the disciplinary hearing, which included the evidence relied upon by DHO Huff. Before said hearing, Cole was asked what witnesses or evidence he wanted to present and whether he wanted representation; DHO Huff

4

confirmed these rights with Cole at the hearing. Cole's main contention is that he was not allowed to review the video evidence even though it was viewed and considered by DHO Huff.

The United States Court of Appeals for the Fourth Circuit has held that prisoners have a "qualified right to access and compel consideration of any video surveillance evidence of the incident giving rise to his loss of good time credits." *Lennear v. Wilson*, 937 F.3d 257, 279 (4th Cir. 2019). Relevant here, a prisoner is entitled to review video evidence "unless the government establishes that disclosure of such evidence would be, under the particular circumstances of the case, 'unduly hazardous to institutional safety or correctional goals.'" *Id.* at 269 (quoting *Wolff*, 418 U.S. at 566). "[P]rison officials bear the 'burden to come forward with evidence of the reasons for denying an inmate's request for access to documentary evidence," and "if prison officials fail to identify a specific safety or correctional concern, courts may not 'speculate' as to the officials' potential reasons for denying an inmate access to evidence in order to uphold a disciplinary decision." *Id.* at 270 (quoting *Smith v. Massachusetts Dep't of Correction*, 936 F.2d 1390, 1400 (1st Cir. 1991)). Here, Respondent has not provided any explanation for why Cole was not allowed to view the video evidence before his disciplinary hearing. Thus, as the Court will not speculate as to their possible reasoning, it must find that Respondent failed to comply with Cole's qualified right to access the video footage. The Court will therefore turn to whether this procedural due process violation was harmless error.

"[P]rocedural errors in disciplinary proceedings are subject to harmless error review." *Lennear*, 937 F.3d at 276 (citing *Brown v. Braxton*, 373 F.3d 501, 508 (4th Cir. 2004)). "[C]ourts tasked with determining whether prison officials' failure to disclose or consider testimonial or documentary was harmless … consider[ ] whether the excluded evidence could have 'aided' the inmate's defense." *Lennear*, 937 F.3d at 277 (quoting *Grossman v. Bruce*, 447 F.3d 801, 805 (10th

Cir. 2006)). Evidence that "contradict[s] a correctional officer's version of events" or "call[s] into question that officer's credibility" aids the prisoner. *Id.* at 278.

The Court finds Respondent's failure to permit Cole to view the video evidence was harmless error in light of the fact that DHO Huff reviewed and considered the surveillance video in making his decision. Cole asserts that DHO Huff could not identify what was being put in or removed from the gym bag and failure to allow him to view the video deprived him of putting on an adequate defense. Petition at 7. However, even if Cole could have identified the items or who possessed the Suboxone, it would not call into question the guilty finding because Cole was responsible for any items in the bag pursuant to Program Statement 5270.09. *See* Huff Decl., Attach. H. As such, although Cole should have been provided an opportunity to view the surveillance video upon request, the failure to provide him access to the video was harmless error in this case. Accordingly, Cole's claim fails.

As to Cole's claim that his rights were violated because the other inmates involved were not disciplined, the Court construes it as a claim under the Equal Protection Clause. The Equal Protection Clause generally requires the government to treat similarly situated people alike. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To show that their equal protection rights were violated, a prisoner must demonstrate that they were treated differently than similarly situated prisoners and the discrimination was intentional or purposeful. *See Williams v. Bitner*, 307 F. App'x 609, 611 (3d Cir. 2009) (citing *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985)). Here, Cole does not allege that he was treated differently based on a suspect class, nor does he demonstrate that the other inmates were similarly situated. At most, the record shows that he was held responsible for the contents of his gym bag and the other inmates in the recreation area were not. Nothing indicates purposeful discrimination in the decision to discipline Cole rather than the other inmates. As such, this equal protection claim has no merit.

Finally, Cole claims that the FCI-Cumberland staff was required to use an NIK test to identify the unknown substances in his bag and violated his rights by failing to do so. BOP Program Statement 6060.08, Urine Surveillance and Narcotic Identification, states as follows:

> Each Captain will ensure the institution maintains a supply of Narcotic Identification Kits … to determine the identity of unknown substances.
>
> All lieutenants will be proficient in using the Narcotic Identification Kit and *ordinarily* are responsible for testing unknown substances.
>
> While identification of such substances may be useful for various security purposes, it is often particularly important in the investigation of incident reports and may be important in referring incidents to the Federal Bureau of Investigation.

Sines Decl. ¶ 2. The record indicates that the lieutenant opined that the orange films were too small to test using an NIK and therefore called on a Health Services Administrator to identify the substance. Cole does not cite any authority to support his conclusion that such testing is a requirement to support his claim. *See* Response (ECF No. 11) at 2. Because the relevant regulation does not contain such a directive, the Court cannot find that any federal right has been violated. Therefore, this claim must fail.

### III.   CONCLUSION

For the reasons explained above, Respondent's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 7) is granted. The Petition (ECF No. 1) will be denied and dismissed by a separate Order, which follows.

| | |
|---|---|
| __12/5/24__ | _____/S/_____ |
| Date | Matthew J. Maddox |
| | United States District Judge |